# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

| | |
|---|---|
| EDWIN ANTHONY SMITH, | 2:16-cv-10098-TGB-PTM |
| Petitioner, | HON. TERRENCE G. BERG |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION FOR RECONSIDERATION, DENYING MOTION TO SUBMIT, AND GRANTING MOTION TO SUBMIT CASE SUMMARY |
| DAVID BERGH, | |
| Respondent. | |

Edwin Anthony Smith, a state prisoner at Kinross Correctional Facility in Kincheloe, Michigan, petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. The *pro se* habeas petition challenges Petitioner's conviction for first-degree criminal sexual conduct. *See* Mich. Comp. Law § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen). Petitioner alleges as grounds for relief that: the trial court abdicated its responsibility to control the proceedings by failing to take action in response to the prosecutor's

failure to present DNA evidence at trial; the prosecutor committed misconduct by choosing not to pursue DNA testing and presenting perjured testimony; Petitioner was denied effective assistance of counsel because trial counsel failed to investigate and present potential defenses at trial. Also pending before the Court are: (1) Petitioner's motion for reconsideration of the Court's order denying his motions for release on bond and to expedite matters (ECF No. 24); (2) Petitioner's motion to submit a summary of his case for the benefit of the Court (ECF No. 27); and (3) Petitioner's motion to submit his habeas petition for the Court's consideration (ECF No. 27).

Because the Court finds that Petitioner's claims of error by the trial court and prosecutorial misconduct are procedurally defaulted, and the state court's adjudication of Petitioner's claim for ineffective assistance of counsel was reasonable, the Court will deny the habeas petition. The motion for reconsideration will also be denied, as will the motion to submit. But the motion for leave to file a summary of the case will be granted, and the Court has considered that summary in determining the disposition of the petition and these motions.

Additionally, Petitioner will be denied a certificate of appealability but granted leave to proceed *in forma pauperis* should he nonetheless choose to appeal this Court's decision.

## BACKGROUND

Petitioner was charged with three counts of first-degree criminal sexual conduct under Mich. Comp. Law § 750.520b(1)(a), arising from sexual penetration of his then-twelve-year-old stepdaughter. *People v. Smith*, No. 312021, 2014 WL 4263093, at *1 (Mich. Ct. App. Aug. 28, 2014) (*per curiam*) (unpublished). At trial, Petitioner's stepdaughter would testify that he penetrated her with two sex toys, one orange and the other purple, and then performed oral sex on her. *Id.* When the police executed a search warrant, they seized an orange sex toy from among Petitioner's belongings. *Id.* The purple sex toy was never found. *Id.* During the case's early stages, the prosecutor said he would send the orange sex toy to the state crime lab for DNA analysis. *Id.* But he never did. *Id.* During Petitioner's 2012 trial, defense counsel never challenged the prosecutor's failure to test the orange sex toy for DNA testing. *Id.* Instead, he aggressively cross-examined the officer in

charge of the criminal investigation on her decision *not* to conduct DNA analysis, as well as her failure to investigate other potentially exculpatory leads. *Id.* Upon the completion of trial, a jury in Wayne County Circuit Court convicted Petitioner of one count of first-degree criminal sexual conduct for sexual penetration of a minor using the orange sex toy. *Id.* He was acquitted of the remaining two counts. *Id.* The trial court sentenced Petitioner as a third habitual offender to 25 to 38 years. *Id.; see also* Mich. Comp. Laws § 769.11 (habitual offender statue governing punishment of a felony committed by a person previously convicted of two or more felonies).

Petitioner filed a direct appeal of his conviction to the Michigan Court of Appeals. The Wayne County Prosecutor's Office stipulated that it would hold that appeal in abeyance until the orange sex toy could be tested for DNA. *People v. Smith*, No. 312021 (Mich. Ct. App. Sept. 18, 2013). On September 18, 2013, the state appellate court approved that stipulation and a few months later, on January 13, 2014, Bode Technology of Lorton, Virginia submitted a forensic case report to Petitioner's appellate attorney. Pet. for Writ of Habeas Corpus, ECF

4

No. 1-5 at PageID.235–36. That report summarized DNA analysis conducted on samples taken from two parts of the orange sex toy involved in the underlying case. *Id.* The report concluded that the partial DNA profile obtained from one of the samples was "consistent with a mixture of at least two individuals" but "no conclusions can be made on the partial DNA profile." *Id.* Similarly, analysis of the second DNA profile was found to be "consistent with a mixture of at least two individuals including at least one male contributor" but "no conclusions can be made on the mixture DNA profile." *Id.* The DNA results are thus inconclusive, and not plainly exculpatory.

The Michigan Court of Appeals affirmed Petitioner's conviction on August 28, 2014. *Smith*, 2014 WL 4263093, at *1. The brief submitted by post-conviction counsel set forth one primary argument—that Petitioner's 25-year mandatory minimum sentence violated the separation of powers doctrine because it limited the sentencing court's use of discretion to fashion an appropriate sentence. *Id.* The state appellate court rejected that argument. *Id.* Petitioner also presented other grounds for post-conviction relief in a *pro se* supplemental brief.

*Id.* at *3. Among those additional grounds were the trial court's claimed failure to control the proceedings by choosing not to challenge the prosecutor's failure to present DNA evidence; the prosecutor's alleged misconduct by failing to pursue DNA testing and presenting perjured testimony; and constructive denial of assistance of counsel evidenced by trial counsel's failure to investigate and present potential defenses. *Id.* at *3–5. The state appellate court found that none of these issues warranted relief. *Id.* at *3. Petitioner later raised these same claims in a brief to the Michigan Supreme Court, which denied him leave to appeal on May 28, 2015. *People v. Smith,* 863 N.W.2d 316 (Mich. 2015).

On January 12, 2016, Petitioner filed a petition for writ of federal habeas corpus. ECF No. 1. Respondent moved to dismiss his claims for habeas relief, arguing that Petitioner had failed to properly exhaust state remedies for at least some of his claims. ECF No. 6. Petitioner then filed a motion to amend his habeas petition. ECF No. 14. Judge John Corbett O'Meara, who presided over Petitioner's habeas case until it was reassigned to this Court on July 3, 2018, granted him leave to

amend the petition and untangled his exhausted claims from those he had not yet exhausted state court remedies for. Aug. 9, 2017 Order, ECF No. 16. At Judge O'Meara's suggestion, Petitioner agreed to delete the unexhausted claims from his petition and to proceed only with those claims the Court deemed exhausted:

1) Failure of the trial court to control the proceedings by:

    a. Allowing DNA test results to be excluded at trial;

    b. Allowing the prosecutor to breach a court order at trial;

    c. Allowing the prosecutor to deceive jurors regarding DNA testing of the orange sex toy;

    d. Ignoring Petitioner's request to conduct an *in camera* investigation of a transcript;

2) Prosecutorial misconduct demonstrated by government's decision to proceed with trial before obtaining DNA results and without informing the jury about plans to conduct DNA testing;

3) Trial counsel's failure to properly investigate the case.

*Id.* at 5. Petitioner then filed another motion to amend, seeking to add testimony from a 2011 preliminary hearing he considered relevant to the issue of DNA testing. Pet.'s Mot. to Amend Br. in Support of Habeas Pet., ECF No. 14. Judge O'Meara granted that motion on

August 9, 2017 and ordered the government to respond to Petitioner's exhausted claims for habeas relief.  ECF No. 16.

Additionally, Petitioner filed two motions to strike, which the Court need not discuss here, as well as a motion for bond pending disposition of his habeas petition, and a motion for expedited consideration.  *See* ECF Nos. 17, 20, 21, 22.  Judge O'Meara denied all of those motions.  Mar. 19, 2018 Order, ECF No. 23.  Most recently, Petitioner filed a motion for reconsideration of his motions for bond, and for expedited consideration.  ECF Nos. 24, 25.  After Judge O'Meara announced his retirement, Petitioner's case was reassigned to this Court on July 3, 2018.  *See* Min. Entry dated Jul. 3, 2018.  Finally, on September 24, 2018, Petitioner filed a motion asking this Court to rule on his habeas petition.  ECF No. 27.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 16 (2013).  Habeas relief may be granted only where the state

8

court's decision was "contrary to, or involved an unreasonable application" of United States Supreme Court precedent or was "based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d). Federal habeas law "thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Under this standard, even a strong case for relief does not, in and of itself, yield a conclusion that the state court's contrary decision was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Further, absent extenuating circumstances such as evidence "that could not have been previously discovered through the exercise of due diligence," this Court's review must be "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (discussing 28 U.S.C. § 2254). The Court must also presume that the state court's findings of fact are

correct "unless rebutted by 'clear and convincing evidence.'" *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. § 2254(e)(1)).

## A. The trial court's alleged failure to control the proceedings

Petitioner alleges the trial court failed to control the trial proceedings by: allowing potentially exculpatory DNA test results to be excluded at trial; permitting the prosecutor to deceive jurors about DNA testing; ignoring the prosecutor's breach of an October 4, 2011 calendar conference order allegedly mandating presentation of scientific or medical evidence at trial; and ignoring Petitioner's request at sentencing to have the court review a transcript of the calendar conference discussing DNA testing. The Court finds that these grounds for relief are procedurally defaulted because they were not preserved for state appellate review. Further, the decision by the Michigan Court of Appeals was not contrary to established Supreme Court precedent and did not involve an unreasonable application of that court's jurisprudence, or an unreasonable determination of the facts presented by Petitioner.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The state procedural rule at issue here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to make their objections before the trial court to preserve them for appellate review. *People v. Buie*, 825 N.W.2d 361, 374 (Mich. 2012); *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011) ("Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule.").

Because Petitioner did not object at trial to the court's failure to control the proceedings, those claims were not preserved for this Court's review. The Michigan Court of Appeals flagged the problem on direct review, noting that "[b]ecause defendant did not raise this issue at trial, the issue is unpreserved and our review is limited to plain error

affecting defendant's substantial rights." *Smith*, 2014 WL 4263093 at *3 (citing *People v. Vaughn*, 821 N.W.2d 288, 296 (Mich. 2012)).

In "all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," federal courts are barred from conducting habeas review unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[1] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, because Petitioner's claims regarding the trial court's alleged failure to control the proceedings are procedurally defaulted, Petitioner must show "cause" for failing to follow state

---

[1] "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Proving actual innocence requires presenting new and reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner has not presented such evidence here.

procedure as well as "actual prejudice" resulting from the alleged violation of federal law.

To the extent Petitioner claims ineffective trial counsel was cause for his procedural default, he must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner has not made that showing here. As pointed out by the Michigan Court of Appeals, defense counsel made strategic use of the absence of DNA evidence by cross-examining the investigating officer about her decision not to test the orange sex toy for DNA. *See generally Smith*, 2014 WL 4263093 (providing a more detailed summary of defense counsel's litigation strategy). Accordingly, Petitioner has not established cause for his noncompliance with Michigan's contemporaneous objection rule.

Moreover, Petitioner cannot overcome procedural default because he did not suffer actual prejudice as a result of the trial court's alleged failure to control the proceedings. Actual prejudice is distinct from "the mere possibility of prejudice." *Arias v. Lafler*, 511 Fed. App'x 440, 447

(6th Cir. 2013) (citations omitted). And "the prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Id.* (quoting *Rust v. Zent*, 17 F.3d 155, 161–62 (6th Cir. 1994)). All of Petitioner's allegations about the trial court's failure to control the proceedings stem from its decision not to *sua sponte* order the government to present DNA analysis of the orange sex toy at trial. But Petitioner has not shown how the absence of DNA evidence at trial negatively affected the outcome of his case. Critically, the results of the delayed DNA testing are not clearly exculpatory; they are inconclusive and consistent with a mixture of DNA from at least two individuals, including at least one male contributor. Habeas Pet. at PageID.235. Consequently, the trial court's decision not to order the government to conduct DNA testing did not necessarily cause prejudice to Petitioner. Further, Petitioner was convicted based on testimony by the complainant, his pre-teen stepdaughter, and he has not presented reliable evidence calling the fairness of his conviction into question.

14

Petitioner has thus failed to demonstrate the cause and actual prejudice required to overcome procedural default.

On the merits, Petitioner has not shown that the decision by the Michigan Court of Appeals was "contrary to, or involved an unreasonable application" of United States Supreme Court precedent, nor that it was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). As the state appellate court noted, Petitioner's trial counsel strategically focused on the lack of DNA testing to support the argument that the investigating officer was "incompetent, lax, biased against defendant, or indifferent to defendant's plight." *Smith*, 2014 WL 4263093 at *3. Under these circumstances, "any intervention by the trial court [by ordering DNA testing] may have interfered with defense counsel's strategy." *Id.* Accordingly, the Michigan Court of Appeals determined that the trial court's failure to order the government *sua sponte* to conduct DNA testing and present the results of DNA testing at trial does not create a ground for post-conviction relief. That decision was consistent with

United States Supreme Court precedent and constitutes a reasonable application of that court's jurisprudence.

To the extent Petitioner's claim for failure to control the proceedings is based on the trial court's evidentiary rulings or violation of Mich. Comp. Laws § 768.29 ("It shall be the duty of the judge to control all proceedings during the trial"), Petitioner is not entitled to any relief on this claim. The Supreme Court has consistently held that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Based on the foregoing, the Court reiterates its agreement with the state appellate court's decision that the trial court did not err or fail to control the proceedings by allowing trial to proceed without DNA evidence. The prosecution bears the burden of proof at trial and the defendant is presumed innocent. If the prosecution elects not to present certain scientific evidence, it runs the risk that the jury may find the evidence insufficient to prove guilt beyond a reasonable doubt. It is not error for a court to allow the prosecution to determine what evidence it wishes to present or how much investigation it wishes

to undertake to prove the case. Petitioner is not entitled to federal habeas relief on his claim that the trial court failed to properly control the proceedings.

## B. Prosecutorial Misconduct

Petitioner next contends the prosecutor duped the jury by proceeding to trial without testing the orange sex toy for DNA and permitted a government witness to perjure himself on the stand. This claim also suffers from procedural default. Moreover, with respect to the merits, Petitioner has not shown the prosecutor's conduct was so egregious as to deprive him of a fair trial, or that the Michigan Court of Appeals' decision on this claim was contrary to established Supreme Court precedent or involved an unreasonable application thereof.

Like Petitioner's claim for failure to control the trial proceedings, his prosecutorial misconduct claim is procedurally defaulted. Petitioner did not contemporaneously object to the alleged misconduct at trial. *See Taylor*, 649 F.3d at 451 (Michigan's contemporaneous objection rule is "a well-established and normally enforced procedural rule"). And the Michigan Court of Appeals enforced the contemporaneous objection rule

by reviewing Petitioner's unpreserved claim for "plain error" affecting his substantial rights. *Smith*, 2014 WL 4263093 at *1. Plaintiff has not established the cause and actual prejudice required to overcome procedural default.

Procedural default aside, "[c]laims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus case. *Millender v. Adams*, 376 F.3d 520, 528 (2004). The Supreme Court's decisions "demonstrate that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The relevant question is thus whether the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Further, while prosecutors may not suppress evidence favorable to a defendant, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), neither do they have a duty to test evidence. *Coy*, 669 N.W.2d at 844 (citing *Youngblood*, 488 U.S. at 58). Similarly, they have no duty to exhaust

all scientific means at their disposal. *Coy*, 669 N.W.2d at 833 (citing *People v. Allen*, 88 N.W.2d 433 (1958)).

In support of his prosecutorial misconduct claim, Petitioner leans heavily on the prosecutor's statement during a pretrial conference that she would send the orange sex toy to the Michigan State Police lab for DNA testing. *But see* Habeas Pet. at PageID.65 (Trial Court Summary Statement of Calendar Conference stating only "scientific/medical ev. expected"). The government, however, was not required to conduct DNA analysis or present DNA evidence to the jury. *See People v. Coy*, 669 N.W.2d 831, 844 (Mich. Ct. App. 2003) (explaining there is no duty to test evidence) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Further, the jury was well aware from defense counsel's cross-examination of the officer-in-charge that the government had *not* tested the orange sex toy for DNA. In fact, the officer testified that testing would not have been helpful because of the gap between the crime and seizure of the sex toy, and because the complainant at some point stated she had used the object on herself. *Smith*, 2014 WL 4263093 at *4. Accordingly, it is unclear how the prosecutor misled the jury by not

presenting DNA evidence at trial. In addition, because the results of DNA testing turned out not to be exculpatory, the government's decision not to test for DNA or present DNA evidence at trial did not prejudice the Petitioner. As explained by the Michigan Court of Appeals, the absence of DNA evidence at trial may actually have benefitted Petitioner: "defense counsel was able to use the absence of any testing to fuel his defense strategy of attacking the thoroughness of the police investigation." *Id.* Based on the foregoing, this Court agrees with the state appellate court's conclusion that Petitioner cannot establish he was prejudiced by any alleged misconduct by the prosecutor. *See id.*

Petitioner also contends the prosecutor intentionally elicited perjured testimony from Officer Beckem, one of the government's trial witnesses, at trial. "A conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Fields*, 763 F.3d at 462 (quoting *Giglio,* 405 U.S. at 154). And to prove a due process violation caused by the prosecutor's failure to

correct false testimony, the Petitioner must demonstrate that: (1) the statement was actually false; (2) it was material; and (3) the prosecution knew it was false. *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009). This Court agrees with the Michigan Court of Appeals that Petitioner has not presented any evidence of perjured testimony, or shown that the prosecutor knowingly permitted the officer to perjure himself.

Petitioner's perjury allegation focuses on testimony by Officer Beckem that there was no scientific evidence that would assist Petitioner, and that the prosecution had enough evidence to move forward without scientific evidence. Petitioner claims this testimony was false because the prosecutor stated at a pretrial conference that he would send the orange sex toy to the crime lab for DNA analysis. Petitioner, however, has not presented evidence disputing that the results of DNA testing on the orange sex toy did not become available until after trial. *See* Habeas Pet. At PageID.230–31 (indicating DNA testing did not occur until after trial). Officer Beckem's testimony was thus not plainly factually false, nor was it material. The Michigan Court

of Appeals' finding that "[o]n this record, there is no basis for defendant's claim that he was convicted through the use, knowing or otherwise, of perjured testimony, was thus not contrary to or an unreasonable application of Supreme Court precedent.

## C. Trial counsel's failure to properly investigate the case.

Finally, Petitioner alleges he was constructively denied counsel at critical stages of the criminal proceedings because his attorney failed to properly investigate potential defenses. The Michigan Court of Appeals rejected that claim and concluded defense counsel's representation at trial did not fall below an objective standard of reasonableness, and that he conducted reasonable investigation into Petitioner's potential defenses. That decision was not contrary to or an unreasonable application of Supreme Court precedent.

"The proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. A claim for ineffective assistance of counsel warranting reversal of a conviction has two components. First, the Petitioner must show that the counsel's performance was deficient. *Id.* Deficiency within the meaning of this

inquiry "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, the Petitioner must establish that the deficient performance "prejudiced the defense."[2] *Id.* Here, Petitioner has shown neither.

At trial, defense counsel subjected the prosecution's case to meaningful adversarial testing. He participated in *voir dire* and gave an opening statement in which he encouraged jurors to presume Petitioner's innocence and to use common sense in deciding whether the government had proved its case. He also cross-examined government witnesses, made appropriate objections,[3] gave a closing argument, and ultimately succeeded in persuading the jury to find Petitioner not guilty

---

[2] In certain extreme circumstances where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," the defendant-appellant need not show specific prejudice. *U.S. v. Cronic*, 466 U.S. 648, 658–60 (1984). Such conduct was not present in Petitioner's case.

[3] To the extent Petitioner claims his attorney failed to make appropriate objections, "counsel was under no professional obligation to make meritless objections." *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 508 (6th Cir. 2012). Because Petitioner's underlying claims about the trial court and prosecutor lack merit, defense counsel's failure to object to same do not establish ineffective assistance of counsel.

on two of the three charged counts. Based on this evidence, the state appellate court's conclusion that Petitioner has "failed to establish that defense counsel's representation of defendant at trial fell below an objective standard of reasonableness" is consistent with Supreme Court precedent and a reasonable application the same. *See Smith*, 2014 WL 4263093, at *6.

Concerning investigation, defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. But "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

The record shows defense counsel adequately investigated the facts of Petitioner's case and was well prepared for trial.  As explained by the Michigan Court of Appeals:

> Counsel attempted to show that the victim and her grandmother had a motive to falsely accuse defendant so that the victim would be removed from her home and could live with her grandmother, as the victim wanted. Counsel also elicited testimony that the victim was knowledgeable about sex before the charged incident and that she engaged in other sexual behavior.

*Smith*, 2014 WL 4263093, at *5.  This strategy demonstrates defense counsel investigated Petitioner's potential defenses, and used the fruits of that investigation to cast doubt on complainant's testimony at trial.

Petitioner nonetheless believes this attorney should have produced LaVerne Mock (known as "Cookie" by the complainant), who swore in an affidavit that she resided with Petitioner and his family on the date of the alleged crimes. But Mock's affidavit failed to establish any personal knowledge of the crimes in question.  And according to complainant, Mock came downstairs *after* Petitioner penetrated the complainant and went directly to the kitchen; Petitioner and the complainant were in the living room.  Mock then left the kitchen and

immediately went back upstairs, without interacting with Petitioner or his stepdaughter. Jul. 10, 2012 Trial Tr. at 53-54. Because it does not appear that Mock would have aided Petitioner's defense, it was a reasonable trial strategy not to call her as a defense witness. The Court concludes, consistent with the state appellate court's decision, that Petitioner's "failure to investigate" claim lacks merit and is belied by the record; the same is true for his claim of deficient performance by defense counsel. The Michigan Court of Appeals' decision on Petitioner's ineffective assistance of counsel claims was not contrary to established Supreme Court precedent or an unreasonable application of that Court's jurisprudence. Accordingly, Petitioner is not entitled to relief on his claim for deficient performance of trial counsel.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED.** The Court will deny a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented deserve encouragement to proceed

further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the Petitioner nonetheless decides to appeal this Court's decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith. The Court further **GRANTS** Petitioner's motion to submit a summary of his case (ECF No. 27). The Court has reviewed that summary as part of the record in considering the petition and these motions. Petitioner's motion for reconsideration of the order denying him release on bond and for expedited review of his case is **DENIED** as moot, as is his motion to submit.

**SO ORDERED**.

Dated: January 31, 2019          s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on January 31, 2019, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager